TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
CHRISTOPHER C. KENDALL (Cal. Bar. No. 274365)
BENEDETTO L. BALDING (Cal. Bar No. 244508)
Assistant United States Attorneys
Deputy Chiefs, International Narcotics,
 Money Laundering, and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2576/2274
     Facsimile:  (213) 894-0142
     E-mail:     christopher.kendall@usdoj.gov
                 benedetto.balding@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>LUIS DE ARCOS,<br><br>          Defendant. | No. CR 2:21-00588-JFW-5<br><br>PLEA AGREEMENT FOR DEFENDANT<br>LUIS DE ARCOS |

     1.   This constitutes the plea agreement between LUIS DE ARCOS
("defendant") and the United States Attorney's Office for the Central
District of California (the "USAO") in the above-captioned case.
This agreement is limited to the USAO and cannot bind any other
federal, state, local, or foreign prosecuting, enforcement,
administrative, or regulatory authority.

### DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the indictment in <u>United States v. Marco Antonio Santillan Valencia, et al.</u>, CR No. 2:21-00588-JFW, which charges defendant with Conspiracy to Violate the Export Administration Regulations, in violation of 50 U.S.C. § 4819(a), (b).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the

2

1  following: the items listed in Appendix A, attached hereto

2  (collectively, the "Forfeitable Assets").

3       b.   To the Court's entry of an order of forfeiture at or

4  before sentencing with respect to the Forfeitable Assets and to the

5  forfeiture of the assets.

6       c.   To take whatever steps are necessary to pass to the

7  United States clear title to the Forfeitable Assets, including,

8  without limitation, the execution of a consent decree of forfeiture

9  and the completing of any other legal documents required for the

10  transfer of title to the United States.

11       d.   Not to contest any administrative forfeiture

12  proceedings or civil judicial proceedings commenced against the

13  Forfeitable Assets.  If defendant submitted a claim and/or petition

14  for remission for all or part of the Forfeitable Assets on behalf of

15  himself or any other individual or entity, defendant shall and hereby

16  does withdraw any such claims or petitions, and further agrees to

17  waive any right he may have to seek remission or mitigation of the

18  forfeiture of the Forfeitable Assets.

19       e.   Not to assist any other individual in any effort

20  falsely to contest the forfeiture of the Forfeitable Assets.

21       f.   Not to claim that reasonable cause to seize the

22  Forfeitable Assets was lacking.

23       g.   To prevent the transfer, sale, destruction, or loss of

24  any and all assets described above to the extent defendant has the

25  ability to do so.

26       h.   To fill out and deliver to the USAO a completed

27  financial statement listing defendant's assets on a form provided by

28  the USAO.

1         i.    That forfeiture of Forfeitable Assets shall not be

2    counted toward satisfaction of any special assessment, fine,

3    restitution, costs, or other penalty the Court may impose.

4    THE USAO'S OBLIGATIONS

5       4.    The USAO agrees to:

6         a.    Not contest facts agreed to in this agreement.

7         b.    Abide by all agreements regarding sentencing contained

8    in this agreement.

9         c.    At the time of sentencing, move to dismiss the

10   remaining counts of the indictment as against defendant.  Defendant

11   agrees, however, that at the time of sentencing the Court may

12   consider any dismissed charges in determining the applicable

13   Sentencing Guidelines range, the propriety and extent of any

14   departure from that range, and the sentence to be imposed.

15        d.    At the time of sentencing, provided that defendant

16   demonstrates an acceptance of responsibility for the offense up to

17   and including the time of sentencing, recommend a two-level reduction

18   in the applicable Sentencing Guidelines offense level, pursuant to

19   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

20   additional one-level reduction if available under that section.

21        e.    Recommend that defendant be sentenced to a term of

22   imprisonment no higher than the low end of the applicable Sentencing

23   Guidelines range, provided that the offense level used by the Court

24   to determine that range is 21 or higher and provided that the Court

25   does not depart downward in offense level or criminal history

26   category.  For purposes of this agreement, the low end of the

27   Sentencing Guidelines range is that defined by the Sentencing Table

28   in U.S.S.G. Chapter 5, Part A, without regard to reductions in the

term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

<u>NATURE OF THE OFFENSE</u>

5.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy to violate the Export Administration Regulations ("EAR"), in violation of 50 U.S.C. § 4819(a), (b), the following must be true: (1) there was an agreement between two or more people to violate the EAR, namely, by (a) soliciting the export of, attempting to export, causing others to export, and aiding, abetting, counseling, commanding, and inducing the export from the United States to Mexico of, items controlled on the Commerce Control List ("dual-use items"), without first having obtained a license or authorization from the Department of Commerce to do so, as required by the EAR, in violation of 18 U.S.C. §§ 4819(a)(2); and by (b) engaging in transactions and taking other actions with the intent to evade the provisions of the EAR, in violation of 18 U.S.C. § 4819(a)(2) and (2) defendant willfully became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

<u>PENALTIES</u>

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 50 U.S.C. § 4819(a), (b), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant

fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

> Beginning on or before March 2020, and continuing until on or about September 11, 2020, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendant and his co-conspirators knowingly and willfully conspired and agreed to: (1) solicit the export of, attempt to export, cause others to export, and aid, abet, counsel, command, and induce the export from the United States to Mexico of, items controlled by the Export Administration Regulations ("EAR") and identified on the Commerce Control List ("dual-use items"), published at 15 Code of Federal Regulations Part 774, Supp. No. 1, without first having obtained a license or authorization from the Department of Commerce to do so, as required by the EAR, in violation of 50 U.S.C. §§ 4819(a)(2); and (2) engage in transactions and take other actions with the intent to evade the provisions of the EAR, in violation of 50 U.S.C. § 4819(a)(2).  Defendant knew that the export of these dual-use items to Mexico without a license was unlawful and agreed with his coconspirators to take steps to conceal the conduct from authorities.  Defendant willfully became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

> The conspiracy was carried out as follows: (1) a co-conspirator ("Co-Conspirator #1") would agree to obtain dual-use items and other similar goods in the United States to be transported to Mexico on behalf of co-conspirators; (2) using funds in the United States that had been provided by co-conspirators, other

7

co-conspirators would purchase dual-use items and other similar goods in the United States on behalf of Co-Conspirator #1 to be transported to Mexico; (3) co-conspirators would transport dual-use items and other similar goods that had been purchased in the United States to Whittier, California, where Co-Conspirator #1 would arrange for such items to be further transported to Mexico; and (4) defendant and other co-conspirators would pick up dual-use items and other goods in Whittier, California, and elsewhere, and transport those dual-use items and other similar goods to Mexico.

In furtherance of this conspiracy, defendant and his co-conspirators committed at least the following overt acts:

On or about April 9, 2020, using coded language in a text message conversation in which defendant was not a participant, a co-conspirator ("Co-Conspirator #2") informed Co-Conspirator #1 that he had obtained ammunition to be transported to Mexico, and that Co-Conspirator #2 would be delivering the ammunition to defendant the following day.

On or about April 9, 2020, using coded language in a text message conversation in which defendant was not a participant, Co-Conspirator #1 asked Co-Conspirator #2 if Co-Conspirator #2 had the telephone number for defendant, and Co-Conspirator #1 and Co-Conspirator #2 discussed the best route to take from the United States to Mexico.

On or about September 9, 2020, another co-conspirator ("Co-Conspirator #3") traveled to Midway City, California, and transported firearms, firearms parts, and ammunition to defendant so that defendant could transport those items to Mexico on behalf of Co-Conspirator #1 and Co-Conspirator #3.

On September 10, 2020, at the Otay Mesa Port of Entry, defendant possessed the following items that he was attempting to transport from the United States to Mexico on behalf of Co-Conspirator #1 and Co-Conspirator #3: (a) One Daniel Defense model DD5 V4, 7.62 caliber rifle with an obliterated serial number; (b) One War Sport Industries model GPR, 5.56mm/.223 caliber rifle with an obliterated serial number; (c) Approximately 44 rounds of .22 caliber ammunition manufactured by Armscor; (d) One P-mag 7.62mm caliber black magazine; (e) Two FNH 7.62mm caliber 10-round magazines; (f) .357 Magnum caliber ammunition manufactured by Hornady Manufacturing Company; (g) .38 Special caliber ammunition manufactured by Federal Cartridge Company; (h) .357 Magnum caliber ammunition manufactured by Remington Arms Company; (i) .357 Magnum caliber ammunition manufactured by Federal Cartridge Company; (j) 9mm Luger caliber ammunition manufactured by Remington Arms Company; (k) 9mm Luger caliber ammunition manufactured by CCI/Speer; (l) .22 caliber ammunition manufactured by CCI/Speer; (m)

8

12 gauge ammunition manufactured by Federal Cartridge Company; (n) 12 gauge ammunition manufactured by Winchester; and (o) Firearms parts and accessories including a magazine and optic sights/lenses.

On September 11, 2020, at a residence in Midway City, California, defendant possessed the following items, which he intended to transport to Mexico on behalf of Co-Conspirator #1 and Co-Conspirator #3: (a) One Sig Sauer model SIG 716-G2, 6.5mm Creedmoor caliber rifle with an obliterated serial number; (b) Three FN America Model SCAR 20S, 7.62mm caliber rifles with obliterated serial numbers; and (c) Several magazines including two .50 caliber magazines, one 5.56mm caliber P-mag magazine, three tri-colored magazines, one Caltech 7.62mm caliber black magazine, and one black P-mag 7.62mm caliber 10-round magazine.

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 26 | [U.S.S.G. § 2M5.2] |
| Minor Role | -2 | [U.S.S.G. § 3B1.2(b)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

      c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

      d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.   The right to confront and cross-examine witnesses against defendant.

      f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF VENUE</u>

16.   Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offense to which defendant is pleading guilty, to the extent the offense to which defendant is pleading guilty were committed, begun, or completed outside the Central District of California, defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the district where the offense to which defendant is pleading guilty were committed, begun, or completed; and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offense to which defendant is pleading guilty.

<u>WAIVER OF APPEAL OF CONVICTION</u>

17.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

18.   Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 21 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statute, or statute of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

20.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 21 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

21.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

1

<u>EFFECTIVE DATE OF AGREEMENT</u>

2      23.   This agreement is effective upon signature and execution of

3  all required certifications by defendant, defendant's counsel, and an

4  Assistant United States Attorney.

5

<u>BREACH OF AGREEMENT</u>

6      24.   Defendant agrees that if defendant, at any time after the

7  signature of this agreement and execution of all required

8  certifications by defendant, defendant's counsel, and an Assistant

9  United States Attorney, knowingly violates or fails to perform any of

10  defendant's obligations under this agreement ("a breach"), the USAO

11  may declare this agreement breached.  All of defendant's obligations

12  are material, a single breach of this agreement is sufficient for the

13  USAO to declare a breach, and defendant shall not be deemed to have

14  cured a breach without the express agreement of the USAO in writing.

15  If the USAO declares this agreement breached, and the Court finds

16  such a breach to have occurred, then: (a) if defendant has previously

17  entered a guilty plea pursuant to this agreement, defendant will not

18  be able to withdraw the guilty plea, and (b) the USAO will be

19  relieved of all its obligations under this agreement.

20      25.   Following the Court's finding of a knowing breach of this

21  agreement by defendant, should the USAO choose to pursue any charge

22  that was either dismissed or not filed as a result of this agreement,

23  then:

24          a.   Defendant agrees that any applicable statute of

25  limitations is tolled between the date of defendant's signing of this

26  agreement and the filing commencing any such action.

27          b.   Defendant waives and gives up all defenses based on

28  the statute of limitations, any claim of pre-indictment delay, or any

14

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.  Defendant understands that, except as set forth herein or in any contemporaneously signed and filed addenda or supplements signed by all parties, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

16

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30.    The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

_____          5/19/2022
CHRISTOPHER C. KENDALL                    Date
BENEDETTO L. BALDING
Assistant United States Attorneys

_____          5/19/22
LUIS DE ARCOS                             Date
Defendant

_____          5/19/22
JAY L. LICHTMAN                           Date
Attorney for Defendant LUIS DE
ARCOS

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those

17

1  contained in this agreement or in an agreement signed by all parties
2  or on the record in court.  No one has threatened or forced me in any
3  way to enter into this agreement.  I am satisfied with the
4  representation of my attorney in this matter, and I am pleading
5  guilty because I am guilty of the charge and wish to take advantage
6  of the promises set forth in this agreement, and not for any other
7  reason.

LUIS DE ARCOS
Defendant

Date  5/19/22

## CERTIFICATION OF DEFENDANT'S ATTORNEY

12      I am LUIS DE ARCOS's attorney.  I have carefully and thoroughly
13  discussed every part of this agreement with my client.  Further, I
14  have fully advised my client of his rights, of possible pretrial
15  motions that might be filed, of possible defenses that might be
16  asserted either prior to or at trial, of the sentencing factors set
17  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
18  provisions, and of the consequences of entering into this agreement.
19  To my knowledge: no promises, inducements, or representations of any
20  kind have been made to my client other than those contained in this
21  agreement or in an agreement signed by all parties or on the record
22  in court; no one has threatened or forced my client in any way to
23  enter into this agreement; my client's decision to enter into this
24  agreement is informed and voluntary; and the factual basis set forth
25  //
26  //
27  //
28  //

18

1   in this agreement is sufficient to support my client's entry of a

2   guilty plea pursuant to this agreement.

3   _____          5/19/22
                                                _____
4   JAY L. LICHTMAN                             Date
    Attorney for Defendant LUIS DE
5   ARCOS

19

**APPENDIX A**

Defendant agrees to forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following items (collectively, the "Forfeitable Assets"):

Items seized on July 31, 2020, in San Bernardino County:

1.   Approximately 49,400 rounds of .223 Remington caliber ammunition manufactured by Wolf;

2.   Approximately 14,000 rounds of .223 Remington caliber ammunition manufactured by Giulio Fiocchi;

3.   Approximately 1,000 rounds of .300 Blackout caliber ammunition manufactured by Arms Corporation of the Philippines ("Armscor");

4.   Various firearms parts and accessories, including two Trijicon ACOG scopes, approximately 20 50-round ammunition belts, approximately 20 steel high-capacity magazines; and

5.   Approximately $52,471 in United States currency and approximately 10 United States Postal Service Money Orders each in the value of $1,000.

Items seized on July 31, 2020, in Pahrump, Nevada:

1.   Approximately 34,920 rounds of .223 Remington caliber ammunition manufactured by Wolf;

2.   Approximately 1,000 rounds of .300 Blackout caliber ammunition manufactured by Armscor;

3.   Approximately 10,210 rounds of .50 BMG caliber ammunition manufactured by Lake City Army Ammunition Plant;

4.    Approximately 7,520 rounds of .223 Remington caliber ammunition manufactured by Lake City Army Ammunition Plant;

5.    Approximately 2,000 rounds of .223 Remington caliber ammunition manufactured by Poongsan Corporation;

6.    Over 2,800 rounds of various assorted ammunition, including 9mm Luger caliber ammunition, .38 Special ammunition, .44 Remington Magnum ammunition, .380 Auto ammunition, .22 WMR ammunition, and .308 Winchester caliber ammunition;

7.    Firearms parts and accessories including .50 BMG caliber ammunition links and assorted firearms magazines.

Items seized on September 10, 2020, at the Otay Mesa Port of Entry:

1.    One Daniel Defense model DD5 V4, 7.62 caliber rifle with an obliterated serial number;

2.    One War Sport Industries model GPR, 5.56mm/.223 caliber rifle with an obliterated serial number;

3.    Approximately 44 rounds of .22 caliber ammunition manufactured by Armscor;

4.    One P-mag 7.62mm caliber black magazine;

5.    Two FNH 7.62mm caliber 10-round magazines;

6.    .357 Magnum caliber ammunition manufactured by Hornady Manufacturing Company;

7.    .38 Special caliber ammunition manufactured by Federal Cartridge Company;

8.    .357 Magnum caliber ammunition manufactured by Remington Arms Company;

9.    .357 Magnum caliber ammunition manufactured by Federal Cartridge Company;

1      10.   9mm Luger caliber ammunition manufactured by Remington Arms

2  Company;

3      11.   9mm Luger caliber ammunition manufactured by CCI/Speer;

4      12.   .22 caliber ammunition manufactured by CCI/Speer;

5      13.   12 gauge ammunition manufactured by Federal Cartridge

6  Company;

7      14.   12 gauge ammunition manufactured by Winchester;

8      15.   12 gauge ammunition manufactured by Winchester;

9      16.   Firearms parts and accessories including a magazine and

10  optic sights/lenses; and

11      17.   Approximately $10,320 in United States currency.

12  Items seized on September 11, 2020, in Midway City, California:

13      1.   One Sig Sauer model SIG 716-G2, 6.5mm Creedmoor caliber

14  rifle with an obliterated serial number;

15      2.   Three FN America Model SCAR 20S, 7.62mm caliber rifles with

16  obliterated serial numbers; and

17      3.   Several magazines including two .50 caliber magazines, one

18  5.56mm caliber P-mag magazine, three tri-colored magazines, one

19  Caltech 7.62mm caliber black magazine, and one black P-mag 7.62mm

20  caliber 10-round magazine.

21  Items seized on November 6, 2020, in Westlake Village, California:

22      1.   Approximately 77,000 rounds of .223 ammunition;

23      2.   Approximately 300 rounds of .50 caliber armor-piercing

24  incendiary ammunition; and

25      3.   Firearms parts and accessories including  approximately

26  twelve Trijicon ACOG rifle scopes and one mini-gun housing unit.

27  Items seized on January 8, 2021, in Whittier, California:

28      1.   Approximately 3,400 rounds of 7.62x51mm caliber ammunition;

2.    One mini-gun housing part;

3.    One box of 20 rifle lower receivers;

4.    One box of 20 rifle trigger kits;

5.    One box of 50 rifle carry handles with rear sights;

6.    Approximately 10,000 rounds of 8mm Mauser caliber rifle ammunition bearing World War II era German factory markings;

7.    Approximately 6,600 rounds of 7.62x51mm caliber ammunition; and

8.    Approximately 398 rifle magazines.

Items seized on January 11, 2021, in Pahrump, Nevada:

Approximately 20,000 rounds of 7.62x39mm caliber ammunition.

Items seized on January 20, 2021, in Whittier, California:

1.    Approximately 20,000 rounds of 7.62x39mm caliber ammunition;

2.    An Operating Rod Assembly for an M249 light machine gun;

3.    Various firearms parts and accessories, and

4.    Approximately $20,000.